UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

DEC 17   9 15 AM '01

CIVIL ACTION NO.

# 01 - 12211 REK

BETHANY SABBAG; MATTHEW RICHARDS, by and          )
through his next friend, Pamela Richards; MICHAEL   )
PIETRONIRO, by and through his next friend, Carol   )
Pietroniro; TIMOTHY LYNSKY, by and through his next )
friend, Donna Lynsky; MARCIE ZURBLIS, by and through )
her next friend Peter Zurblis; on behalf of themselves and )
all others similarly situated,                      )
                      PLAINTIFFS,                    )
                                                    )
v.                                                  )
                                                    )
JANE SWIFT in her capacity as Governor of Massachusetts; )
WENDY E. WARRING, in her capacity as Commissioner of )
the Massachusetts Division of Medical Assistance;   )
ROBERT P. GITTENS in his capacity as Secretary of the )
Executive Office of Health and Human Services,      )
                                                    )
                      DEFENDANTS.                    )
                                                    )

## COMPLAINT

## INTRODUCTION

1.  Bethany Sabbag, Matthew Richards, Michael Pietroniro, Timothy Lynsky, and Marcie

    Zurblis  are children and young adults with severe disabilities and complex medical

    needs who require skilled nursing care to be delivered in their homes so that they may

    continue to safely live with their families and not be confined to a hospital, nursing home

    or other medical facilities.  The plaintiffs, and other young adults and children throughout

1



the state, depend upon the Massachusetts Medicaid program (MassHealth) to provide this service. The plaintiffs have been unable to obtain nurses to meet all of their needs for nursing services at home because of the failure of the Defendants to provide an adequate system of Medicaid private duty nursing. As a direct result of this failure, the plaintiffs are at risk of serious injury, life-threatening disease and infection and other medical complications that are natural consequences of the lack of appropriate medical care. The plaintiffs bring this action on behalf of all individuals who are similarly affected by the Defendants' actions and inactions.

2.    Plaintiffs seek declaratory, injunctive and other appropriate relief under 42 U.S.C. § 1983 to address:

(a) the Defendants' violations of the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program requirements that state Medicaid programs provide (directly or indirectly) corrective treatment identified as necessary to individuals under the age of 21 who are financially eligible for the Medicaid program and the obligation to provide "such other necessary health care, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan"; and

(b) the Defendants' violation of specific rights created by the Medicaid program, including:

(i) the requirement that services be delivered with reasonable promptness;

2

(ii) the requirement that Medicaid reimbursements to providers be sufficient to provide beneficiaries with access to health services equivalent to that enjoyed by the insured population in the area;

(iii) the requirement that Medicaid recipients be given notice and an opportunity for a hearing whenever the actions of the state agency render a medical service unavailable to the recipient;

(v) the requirements that Medicaid services be sufficient to reasonably achieve their purpose and that services made available to any beneficiary are not less in amount, duration, or scope than the services made available to any other Medicaid beneficiary.

(c) the Defendants' violation of the requirements of nondiscrimination and community integration of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act through the policies of the Defendants in administering the MassHealth program of private duty nursing services and facility based nursing services.

## JURISDICTION

3. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over all civil suits involving questions of federal law, and 28 U.S.C. §§ 1343(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress.

4. Plaintiffs seek declaratory, injunctive and other appropriate relief, pursuant to 28 U.S.C. §§

3

2201 and 2202, Fed. R. Civ. P. 23, 57, and 65, and 42 U.S.C. § 1983.

5. Venue for this action lies in this District pursuant to 28 U.S.C. § 1391(b). All of the events

or omissions giving rise to Plaintiffs' claims occurred here and the Defendants may be found

here.

## PARTIES

### PLAINTIFFS

6. Bethany Sabbag is an eighteen year old MassHealth member who lives with her mother in

Medford, Middlesex County, Massachusetts. Bethany's physician and the MassHealth

program have determined that she is in need of a private duty nurse to provide medical care at

least eighty four (84) hours per week in order to allow Bethany to remain in her family home.

7. Matthew Richards is a four year old who lives with his family in Pepperell, Middlesex

County, Massachusetts. Matthew is severely disabled as a result of a serious brain injury as

an infant. Matthew's physician and the MassHealth program have determined that Matthew

requires seventy (70) hours of private duty nursing services per week to allow him to remain

in his family home.

8. Pamela Richards, Matthew's mother, brings this action as Matthew's next friend.

9. Michael Pietroniro is a 15 year old who lives with his family in Feeding Hills, Hampden

County, Massachusetts. Michael has a long standing history of a severe seizure disorder.

MassHealth and his physician have agreed that as a matter of medical necessity, Matthew

requires private duty nursing services for twenty-four (24) hours per week to remain in his family home.

10. Carol Pietroniro , Michael's mother, brings this action as Michael's next friend.

11. Timothy Lynsky is a five year child who lives with his family in Franklin, Norfolk County, Massachusetts. Timothy is deaf and blind, an amputee and requires one on one, hands on care, around the clock.  Timothy's physician and MassHealth have determined that one hundred and twenty (120) hours of private duty nursing care per week are medically necessary for Timothy to allow him to remain in his family home.

12. Donna Lynsky, Timothy's mother, brings this action on his behalf as his next friend.

13. Marcie Zurblis is an 11 year old who lives with her family in Mansfield, Bristol County, Massachusetts.  Marcie has a metabolism disorder, epilepsy and cortical blindness.  Marcie's physician and MassHealth have determined that seventy (70) hours per week of private duty nursing are medically necessary for her proper medical care at home.

14. Peter Zurbliss, Marcie's father, brings this action on her behalf as her next friend.

## DEFENDANTS

15. Defendant Jane Swift is the Governor of Massachusetts and is the chief executive officer of the Commonwealth. She is responsible for seeking funds from the legislature for the operation of the MassHealth program as well as for directing, supervising, and controlling the executive departments of state government, including the Division of Medical Assistance. Defendant Swift appoints the Secretary of the Executive Office of Health and Human Services ("EOHSS") and approves the appointment of the Commissioner of the Division of

5

Medical Assistance. She is required to review the States' Medicaid Plan prior to its

submission to the United States Department of Health and Human Services for approval. Her

office is at the State House, Boston, Massachusetts. She is sued in her official capacity.

16. Defendant Wendy E. Warring is Commissioner of the Massachusetts Division of Medical

Assistance ("DMA"), which administers the state's Medicaid program pursuant to 42 U.S.C.

§ 1396a and M. G. L. c.118E. The Defendant's principal place of business is at 600

Washington Street, Boston, Suffolk County, Massachusetts. She is sued in her official

capacity.

17. Defendant Robert P. Gittens is the Secretary of the Executive Office of Health and Human

Services (EOHHS). EOHHS, established by M.G.L.c.6A, §2, is the Commonwealth's

cabinet level agency in charge of all health and human service programs in the

Commonwealth. EOHHS manages policy development and service delivery in 15 state

agencies, including the Division of Medical Assistance Under M.G.L.c.6A, §3, Defendant

Gittens was appointed by the Governor and serves directly under her and at her pleasure. He

serves as the executive officer of the Governor for accomplishing all of the purposes of

EOHHS. He appoints the Commissioner of DMA. His office is located at One Ashburton

Place, Room 1109, Boston, Massachusetts . He is sued in his official capacity.

## CLASS ACTION

18. Plaintiffs bring this suit as a class action under Rule 23(a) and (b)(2) of the Federal Rules of

Civil Procedure. The class consists of all MassHealth members under age twenty-one who

have been, or will be, determined by MassHealth to require, as a matter of medical necessity,

6

private duty nursing services in their homes but who have been unable, or will be unable in the future, to secure nurses to fill all of the hours of private duty nursing services determined to be medically necessary by MassHealth and their physicians.

19. The proposed class is of undetermined size, but on information and belief, plaintiffs assert that it is so numerous as to make joinder impracticable within the meaning of Fed. R. Civ. P. 23(b). Plaintiffs believe that the plaintiff class consists of at least five hundred to six hundred individual members.

20. There are questions of law and fact common to the class. These questions include: whether the defendants' administrative practices and reimbursement rates in the MassHealth program with respect to private duty nursing services violate federal Medicaid laws (including specific provisions pertaining to the EPSDT program), the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. These common questions predominate over any differential interests individual class members may have. Defendants' actions are generally applicable to the class as a whole, and plaintiffs seek equitable and other remedies on behalf of the class as a whole.

21. The claims of the named plaintiffs are typical of the claims of each member of the class, within the meaning of Fed. R. Civ. P. 23(a), and are based on and arise out of the common characteristics of the class. All members of the class: 1) are MassHealth members and thereby qualified Medicaid recipients under relevant law; 2) have been approved by MassHealth for the coverage of private duty nursing services in their homes; and 3) have been unable to obtain nurses to fill all hours of private duty nursing services that have been determined to be medically necessary by MassHealth.

7

22. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in class action litigation. Plaintiffs will fairly and adequately represent the interests of the members of the class within the meaning of Fed. R. Civ. P. 23(a).

23. Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the party opposing the class or could as a practical matter be dispositive of the interests of the other members or substantially impair or impede their ability to protect their interests.

24. Defendants' actions and omissions have affected and will affect the class generally, thereby making appropriate final injunctive relief and declaratory relief with respect to the class as a whole.

## STATEMENT OF FACTS

### Bethany Sabbag

25. Bethany Sabbag is an 18 year old young woman with chronic complex medical problems. Her diagnoses are intestinal pseudo obstruction, mitochondrial disorder and IGA nephropathy. Intestinal pseudo obstruction is a motility disorder of the bowel. As a result of this condition Bethany must receive nutrition through a surgically placed triple port central line into her chest which feeds into the major vein to her heart. She has had the central line since December 1993.

26. Bethany has additional diagnoses of asthma, gastroesophagal reflux, ulcerative colitis, autonomic nervous system disregulation, steroid induced glaucoma, acute respiratory distress syndrome, developmental delays, learning disabilities and ADHD.

8

27.   In addition to the central line, Bethany has a jejunostomy tube ("J-tube") into the small intestine which is used for administration of medications and gastrostomy tube("G-tube") into her stomach which is used to decompress and evacuate the stomach.

28.   Bethany lives alone with her mother who is legally blind and works part time. Bethany's mother has been trained in Bethany's care needs.

29.   Bethany requires continuous skilled nursing care. She receives IV infusions through her central line for minimum of 16 hours out of each day. A skilled nurse or her mother must be present during the entire time of these infusions. In addition, nursing care is needed to administer medications because she can not take medications orally and must receive all her medications via the J-tube, her central venous line or by inhalation. Nursing care is also needed to monitor Bethany's condition, assess the central line for signs of infections, flush each port of the line at least once a day with normal saline and heparin, change tubing and central line dressings (sterile procedures), check oxygen saturation level and provide oxygen as needed, and monitor and measure G-tube drainage to prevent dehydration. Additionally, Bethany's complete intake and output each day must be carefully recorded to avoid dehydration with resulting electrolyte imbalance.

30.   Bethany attends high school at the Cotting School, a private special education school for children with complex medical conditions. When Bethany is able to attend school, a nurse must accompany her to school.

31.   Bethany has received private duty nursing services for over 10 years paid for by private insurance and MassHealth. The private insurance pays for the first $8,000.00 dollars of services each year and MassHealth pays the remainder. MassHealth has approved

Bethany for 84 hours of PDN services each week.  Bethany currently receives nursing services through two MassHealth home health agencies: Pediatric Services of America, Inc. and Gentiva Health Services.

32.   Bethany does not receive the full number of hours of private duty nursing for which she is approved, because the provider agencies do not have the nursing staff available to fill the hours and have been unable, despite intensive recruitment efforts, to hire new nurses to address this need.  Despite efforts to "co-vend", during 2001, hours have been unfilled due to lack of availability of nursing staff in the following amounts, according to documentation submitted by the home health agencies to the Division of Medical Assistance:

| | |
|---|---|
| January | 30 nursing hours unfilled due to staffing |
| February | 124 nursing hours unfilled due to staffing |
| March | 68 nursing hours unfilled due to staffing |
| April | 103 nursing hours unfilled due to staffing |
| May | 130 nursing hours unfilled due to staffing |
| June | 114 nursing hours unfilled due to staffing |
| July | 132 nursing hours unfilled due to staffing |
| August | 167 nursing hours unfilled due to staffing |
| September | 109 nursing hours unfilled due to staffing |
| October | 90 nursing hours unfilled due to staffing. |

33.   Frequently Bethany will have no nursing services from 3 p.m. Friday until 7 a.m. Monday.  This means that her mother must stay awake with her throughout the weekend

10

in order to assure proper care for her.

34.     Although Bethany's mother has been trained to provide the skilled interventions that
Bethany requires, Bethany's mother must be alert and rested to provide this complex and
delicate care to her daughter.  Bethany is placed at serious risk when her mother is her
sole caregiver for extended periods of time, due to extreme fatigue and resulting loss of
alertness.

35.     Neither Bethany nor her mother has ever received notice from the Division of Medical
Assistance that fewer than 84 hours of private duty nursing service will be provided per
week.  The Defendants have not advised Bethany that she can appeal the failure to
provide all of the hours of medically necessary private duty nursing services.

36.     The Division has failed to ensure that Bethany will receive all of the hours of private duty
nursing services that are medically necessary with reasonable promptness.

37.     Some of Bethany's private duty nursing hours could be filled by a nurse willing to work
overtime, provided that overtime compensation were available.  MassHealth regulations
do not provide for payment at an overtime rate for nurses employed by home health
agencies.

38.     If Bethany cannot receive sufficient private duty nursing services in her home she may be
compelled to seek admission to a skilled nursing facility or an acute or chronic care
hospital.

**Matthew Richards**

39.     Matthew Richards was born on September 5, 1995.  Shortly after his birth he suffered 47
broken bones and a brain injury as a result of being shaken by a caretaker.  As a result of

this injury, he has a global developmental delay, a seizure disorder, uses a wheelchair for mobility, requires the use of supplemental oxygen, and must be fed though a gastrostomy tube. Matthew was adopted on July 10, 1997 by Pam and Walter Richards.  There are six adopted children and two biological children in their family and they live in Pepperell, Massachusetts.

40.  Matthew requires the medical care provided by a private duty nurse to administer his gastrosotomy feeding, to administer medications, to supervise and coordinate therapies, and to assess his medical condition.

41.  Matthew is a MassHealth member and has been approved for 70 hours per week of private duty nursing services.  Matthew currently receives nursing services from Gentiva, a Massachusetts home health agency.  Gentiva has been unable to recruit sufficient private duty nurses to provide full coverage of the 70 hours per week that have been determined to be medically necessary for Matthew.  During 2001, Matthew has not received the following hours due to the lack of availability of nursing staff, according to documentation submitted by the home health agency to the Division of Medical Assistance:

February    36.00   nursing hours unfilled due to staffing

March       63.00   nursing hours unfilled due to staffing

April       79.00   nursing hours unfilled due to staffing

May         134.00  nursing hours unfilled due to staffing

June        98.00   nursing hours unfilled due to staffing

July        9.00    nursing hours unfilled due to staffing

| August | 33.00 | nursing hours unfilled due to staffing |
| September | 12.00 | nursing hours unfilled due to staffing |
| October | 44.00 | nursing hours unfilled due to staffing. |

42.   If private duty nursing services cannot be provided in Matthew's home on a regular basis, he may be compelled to seek full time care in a pediatric nursing home, hospital or other similar medical facility away from his family.

43.   Neither Matthew nor his family has ever received notice from the Division of Medical Assistance that fewer than 70 hours of private duty nursing service will be provided per week. Matthew has not been advised that he can appeal the failure to provide all of the hours of medically necessary private duty nursing services.

44.   The Division has failed to assure that Matthew will receive all of the hours of private duty nursing services that are medically necessary with reasonable promptness.

45.   Some of Matthew's unfilled hours could be filled by nurses willing to work overtime if overtime compensation were available.

**Michael Pietroniro**

46.   Michael Pietroniro is a fifteen year old boy with chronic complex medical problems. He lives with his family in Feeding Hills, Massachusetts. When Michael was eight months old he had his first seizure and then began to have daily seizures. In December of 1994, his doctors performed a right hemispherectomy which removed the right hemisphere of his brain. This procedure was done to save his life, however it left Michael legally blind with some paralysis and needing to be fed through a gastronomy tube. Michael continues to have daily seizures and needs constant monitoring and care.

47.  Michael's care includes providing oxygen during seizure activity, assessing and monitoring seizure activity, administering medication and feedings, assessing his vital signs and providing full assistance with all activities of daily living.

48.  Michael has been a MassHealth member since he was eighteen months old and has been approved for private duty nursing services since that time.  MassHealth has approved Michael for 24 hours per week of private duty nursing services per week.  Michael receives private duty nursing services from Gentiva, a Massachusetts home health agency. Michael does not receive the full number of hours of private duty nursing for which he is approved, because Gentiva does not have the nursing staff available to fill the hours. These gaps in nursing coverage place Michael at serious risk of injury and disease that may require care in a hospital or nursing home setting.  During 2001, Michael has not received the following hours due to the lack of availability of nursing staff,  according to documentation submitted by the home health agency to the Division of Medical Assistance:

| | |
|---|---|
| January | 41.00 nursing hours unfilled due to staffing |
| February | 63.00 nursing hours unfilled due to staffing |
| March | 43.00 nursing hours unfilled due to staffing |
| April | 40.50 nursing hours unfilled due to staffing |
| May | 24.00 nursing hours unfilled due to staffing |
| June | 53.00 nursing hours unfilled due to staffing |
| July | 61.00 nursing hours unfilled due to staffing |
| August | 48.00 nursing hours unfilled due to staffing |

14

September      77.00 nursing hours unfilled due to staffing.

49.    If private duty nursing services cannot be provided in Michael's home on a regular basis,

he may be compelled to seek full time care in a pediatric nursing home, hospital or other

similar medical facility away from his family.

50.    Neither Michael or his family has ever received notice from the Division of Medical

Assistance that fewer than 24 hours of private duty nursing service will be provided per

week.  Michael has not been advised that he can appeal the failure to provide all of the

hours of medically necessary private duty nursing services.

51.    The Division has failed to assure that Michael will receive all of the hours of private duty

nursing services that are medically necessary with reasonable promptness.

**Marcie Zurblis**

52.    Marcie Zurblis is an 11 year old girl with chronic complex medical problems.  She was

born with a metabolism disorder, epilepsy and cortical blindness.  As a result she is fed

with a gastronomy tube and requires 24 hour monitoring of her seizure activity and vital

signs.  Marcie attends school with a nurse and lives at home with her parents and 3

siblings in Mansfield, Massachusetts.

53.    Marcie is a MassHealth member who has been approved for 70 hours per week of private

duty nursing services.  Marcie currently receives nursing services from Gentiva, a

Massachusetts home health agency, and Gentiva "co-vends" with two other home health

agencies, Americare and Shrivers, to try and fill her nursing needs.  Even with the

efforts to co-vend with other providers, Gentiva, Americare and Shrivers have been

unable to recruit sufficient private duty nurses to provide full coverage of the 70 hours per

week that have been determined to be medically necessary for Marcie.  During 2001, Marcie has not received the following hours due to the lack of availability of nursing staff,  according to documentation submitted by the home health agencies to the Division of Medical Assistance:

January       78.50   nursing hours unfilled due to staffing

February      107.25 nursing hours unfilled due to staffing

March         102.00 nursing hours unfilled due to staffing

April         108.00 nursing hours unfilled due to staffing

May           133.00 nursing hours unfilled due to staffing

June          148.50 nursing hours unfilled due to staffing

July          124     nursing hours unfilled due to staffing

August        165.50 nursing hours unfilled due to staffing

September     133.50 nursing hours unfilled due to staffing

October        78.50  nursing hours unfilled due to staffing.

54.     If private duty nursing services cannot be provided in Marcie's home on a regular basis, she may be compelled to seek full time care in a pediatric nursing home, hospital or other similar medical facility away from her family.

55.     Neither Marcie nor her family has ever received notice from the Division of Medical Assistance that fewer than 70 hours of private duty nursing service will be provided per week.  Marcie has not been advised that she can appeal the failure to provide all of the hours of medically necessary private duty nursing services.

56.     The Division has failed to assure that Marcie will receive all of the hours of private duty

nursing services that are medically necessary with reasonable promptness.

57.     Some of Marcie's unfilled hours of private duty nursing could be filled by nurses willing

to work overtime if overtime compensation were available.

**Timothy Lynsky**

58.     Timothy Lynsky is six year old boy that was born with multiple congenital anomalies.  He

is profoundly deaf, legally blind, is unable to swallow and therefore needs to be suctioned

constantly and is fed with a jejunostomy tube 18 hours a day.  Timothy was released from

the hospital with 24 hours per day private duty nursing care.  In 1998, this was reduced to

120 hours per week.

59.     Timothy is a MassHealth member and currently is approved for 120 hours per week of

private duty nursing.  Timothy currently receives his nursing services from Pediatric

Services of America (PSA).  PSA co-vends with Centrus.   Even with the efforts to co-

vend, PSA and Centrus have been unable to recruit sufficient private duty nurses to

provide full coverage of the 120 hours per week that have been determined to be

medically necessary for Timothy.  During 2001, Timothy has not received the following

hours due to the lack of availability of nursing staff, according to documentation

submitted by the home health agencies to the Division of Medical Assistance:

January         62.00   nursing hours unfilled due to staffing

February        31.00   nursing hours unfilled due to staffing

March           60.00   nursing hours unfilled due to staffing

April           100.00 nursing hours unfilled due to staffing

May             65.00   nursing hours unfilled due to staffing

| June | 169.00 nursing hours unfilled due to staffing |
| July | 54.00  nursing hours unfilled due to staffing |
| August | 173.00 nursing hours unfilled due to staffing |
| September | 104.00 nursing hours unfilled due to staffing |
| October | 105.00 nursing hours unfilled due to staffing. |

60.   If private duty nursing services cannot be provided in Timothy's home on a regular basis, he may be compelled to seek full time care in a pediatric nursing home, hospital or other similar medical facility away from his family.

61.   Neither Timothy nor his family has ever received notice from the Division of Medical Assistance that fewer than 120 hours of private duty nursing service will be provided per week.  Timothy has not been advised that he can appeal the failure to provide all of the hours of medically necessary private duty nursing services.

62.   The Division has failed to assure that Timothy will receive all of the hours of private duty nursing services that are medically necessary with reasonable promptness.

63.   Some of the unfilled private duty nursing hours for Timothy could be filled by nurses willing to work overtime if overtime compensation were available.

**Defendants' Actions Regarding Inability to Locate Providers**

64.   The Defendants are aware that many families receiving MassHealth have been unable to obtain private duty nursing services for the hours that the Division has determined to be medically necessary.  The Division has asked that home health agencies report to the Division all hours that are not provided service and the reason for the inability to provide the service.  The Division has required the reporting of this information for more than two

18

years.

65.     The reports received by the Division indicate that some of the largest home health

agencies in the state have had significant difficulties in meeting the needs of the families

that they are serving.  Some of the agencies report more than 20% of all hours found to be

medically necessary can not be filled due to staffing shortages.

66.     Many of the home health agencies in Massachusetts have reported to the Division that

they are experiencing staffing shortages that make them unable to meet the medical needs

of the families they serve and that this staffing shortage is due to the rates that

MassHealth pays for private duty nursing services.

67.     The Massachusetts Department of Public Health has also gathered information from

families that it serves concerning their inability to obtain private duty nursing services.  A

survey conducted by the Department of Public Health in 2000 indicates that 20- 30% of

the hours of MassHealth private duty nursing services determined to be medically

necessary cannot be provided by agencies or independent nurse practitioners due to

staffing shortages. This information was provided to the Division of Medical Assistance

by the Department of Public Health.

68.     Home health agencies also report that policies regarding overtime, third party payments

and other administrative practices of the Division contribute, along with the low

reimbursement rates, to their inability to recruit and train a sufficient number of private

duty nurses to serve plaintiffs and the class similarly situated individuals.

69.     The "independent nurse practitioner" option of the private duty nursing service of

MassHealth is also not a viable method for meeting the private duty nursing needs of the

plaintiffs and others similarly situated. Many families lack the resources to conduct the extensive search process needed to locate possible nurses, interview applicants, check backgrounds and make selections. Those families who have employed independent nurse practitioners have had problems in hiring and retention of nurses. Billing practices of the Division's contractor, UNISYS, have posed significant obstacles to many families who have attempted to meet their child's needs by hiring independent nurse practitioners.

70.  The Defendants are aware that home health agencies set rates and receive payment for private pay for private duty nursing services that are substantially more than currently being provided under the MassHealth program.

71.  The Defendants are aware that more than twenty home health agencies have gone out of business or ceased to accept MassHealth reimbursement for private duty nursing services within during the period from 1998 to 2001.

72.  The Defendants are aware that many MassHealth home health agencies have had to limit the acceptance of new MassHealth private duty nursing cases due to staffing shortages.

73.  The Defendants are award that the small increase in the rates paid to home health agencies for the provision of private duty nursing services that was announced in March 2001 has not been sufficient to resolve the access issues set forth above.

74.  Despite their awareness of staffing problems for home health agencies providing MassHealth private duty nursing services, the Defendants have failed to make any meaningful change in the administration of the service. As a result, the plaintiffs and others similarly situated are placed at serious medical risk since they do not receive the nursing services that are medically necessary for their health and well-being.

## STATUTORY SCHEME

75.   In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*,

establishing Medicaid, a medical assistance program cooperatively funded by the federal

and state governments.  Medicaid is designed to ensure that low income people receive

necessary medical  services. State participation in the Medicaid program is voluntary, but

if a State elects to participate it must comply with the requirements of Title XIX and

applicable regulations.

76.   The Division of Medical Assistance (DMA)  administers Massachusetts' Medicaid

program, known as "MassHealth", as codified at Mass. Gen. Laws ch. 118E.  MassHealth

pays for certain home health services, including private duty nursing services,  to allow

children and adults with disabilities to live in their family homes.

77.   The Medicaid statute and rules, 42 U.S.C.§§ 1396a(a)(10)(A), 1396a(a)(43),

1396d(a)(4)(B), 1396d(r), 42 C.F.R. § 441.50 *et seq.*, and HCFA, State Medicaid Manual

Part 5, require effective informing of, and screening and treatment of, children and youth

under age 21, with respect to medical services. These statutory and regulatory sections are

collectively known as the Early and Periodic Screening, Diagnosis and Treatment

(EPSDT) program.

78.    42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(4)(B) create the EPSDT program. 42 U.S.C.

§ 1396d(r) describes the services which must be offered under that program , including

the requirement that each eligible child must receive diagnostic and treatment services

and other measures needed to correct or ameliorate defects, illnesses and conditions,

whether or not the needed services are otherwise covered by the state.

79.     42 C.F.R. § 441.56(e) provides that the state Medicaid agency  must set standards for the timely provision of EPSDT services which meet reasonable standards of medical practice, as determined by the agency after consultation with recognized medical  organizations involved in child health care, and must employ processes to ensure timely initiation of treatment, if required, generally within an outer limit of 6 months after the request for screening services.

80.     42 C.F.R. § 441.61 requires the state Medicaid agency to "make available a variety of individual and group providers qualified and willing to provide EPSDT services."

81.     The Defendants are required by  42 U.S.C. § 1396a(a)(30) and its implementing regulation 42 C.F.R. § 447.204 to assure that payment rates and methodologies are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough nurses so that such care and services are available to Medicaid beneficiaries at least to the extent they are available to the general population in the geographic area.

82.     The Defendants are required by 42 U.S.C. § 1396a(a)(8) and its implementing regulation, 42 C.F.R. § 435.930, to assure that  Medicaid-covered services are delivered with reasonable promptness.

83.     The Defendants are required by 42 U.S.C. § 1396a(a)(3) and its implementing regulations, 42 C.F.R. § 431.206, 210, 220  to provide MassHealth members with adequate notice regarding actions of the Medicaid agency concerning the provisions of service and to provide hearings related to those actions.

84.     The Defendants must assure that nursing services made available to any beneficiary are

not less in amount, duration, or scope than the services made available to any other Medicaid beneficiary. 42 U.S.C. § 1396a(a)(10)(B), 42 C.F.R. §§ 440.230 and 440.240 and must assure that the services are sufficient in amount, duration and scope as to reasonably achieve their purpose.

## Private Duty Nursing Services

85.  The Massachusetts Medicaid program pays for private duty nursing services provided by home health agencies and by private duty nurses who contract independently with MassHealth. 130 CMR  403.431.  Private duty nursing services, also referred to as "block nursing" are continuous, specialized skilled nursing services, the administration of which requires a visit of more than two hours. 130 CMR 414.402.

86.  Prior authorization must be obtained from the Division as a prerequisite to payment for all private duty nursing services. The Division bases its decision on the criteria set forth in 130 CMR 414.415.  Prior authorization determines  the medical necessity of the authorized services. 130 CMR 414.406(B).  The provider must perform a screening of the member before requesting prior authorization for private duty nursing services.

87.  The recipient's attending physician must sign the patient care plan documenting the medical necessity for private duty nursing services. 130 CMR 433.479(D).

88.  When the Division approves or modifies the prior-authorization request, it  specifies the number of hours of such services that are reimbursable each calendar week. Authorization for private duty nursing services is valid for a maximum of three months. The authorization is issued in the recipient's name and specifies the frequency, duration, and

(2) the maximum allowable fee listed in the applicable DHCFP fee schedule. 130 CMR 414. 418(A).

93.     The payments made by the Division to the home health agency or the independent nurse constitute payment in full for private duty nursing services as well as for all administrative or supervisory duties relating to such services. 130 CMR 414.418(B).

94.     The rates for the provision of private duty nursing services for MassHealth members are set by the Division of Health Care Finance and Policy, subject to approval by DMA. The current hourly reimbursement to home health agencies for the total costs of providing private duty nursing services are:

|  | Weekdays | Weekends, Nights |
|---|---|---|
| Registered Nurses | $34.92 | $37.72 |
| Licensed practical nurses | $26.23 | $28.32 |

114.3 CMR 24.04(1).

95.     These rates were adopted in February 2001 and were retroactive to December 2000.

### Facility Based Care

96.     The Massachusetts Medicaid program covers long term care in skilled nursing facilities, and in chronic care hospitals for eligible recipients, including children.

97.     The cost of care in any pediatric nursing home, chronic care hospital or other similar medical facility is substantial, and far more than the cost of private duty nursing care delivered in the home for any of the plaintiffs or any members of the class that the plaintiff's represent.

98.     Nursing homes, chronic care hospitals and other medical facilities provide substantially

25

the same nursing care services in an institutional setting that can be provided by a private

duty nurse in the child's home, but at a substantially greater cost to the state.

99.     Placement in a nursing home, hospital or other medical facility deprives a child or young

adult of the companionship of their family and the benefits of community life.

## The Anti-Discrimination Provisions of the Americans With Disability Act and §504 of the Rehabilitation Act of 1973

100.    The Americans With Disability Act (ADA), 42 U.S.C. §12101 et seq., provides that "no

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a

public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Title II of the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12132,

prohibits discrimination in the provision of public services furnished by governmental

entities.  This antidiscrimination mandate requires public entities to administer services,

programs and activities in the most integrated setting appropriate to the needs of qualified

individuals with disabilities.  28 C.F.R. § 35.130(d).  This obligation is often referred to

as the "integration mandate" of the ADA.

101.    The ADA additionally requires that states utilize all available resources to assure that

persons with disabilities who can be served in integrated, non-isolated settings are

actually served in such settings and that all persons with disabilities who are touched by

state service systems are served "even-handedly".

102.    The ADA regulations prohibit a public entity from "[p]rovid[ing] different or separate

26

aids, benefits or services to individuals with disabilities or to any class of individuals with disabilities that is provided to others" unless necessary to provide services that are as effective. 28 C.F.R. §35.130(b)(1)(iv).

103.  A major purpose of the ADA is to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, and to provide clear, strong, consistent and enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. §12101(b)(1)&(2).

104.  The regulations implementing the ADA require that: "a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §35.130(d).

105.  The ADA regulations prohibit the differential treatment of individuals with disabilities or any class of individuals with disabilities with respect to their opportunity to participate in or access the full range of aids, benefits or services in any program operated by a public entity. 28 C.F.R. §§35.130 (b)(i)(ii) and (b)(i)(iv). The regulations further provide that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) that have the purpose or effect of substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities...." 28 C.F.R. §35.101(b)(3).

106.  The ADA regulations also provide that "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or

any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. §35.130(b)(8).

107. The ADA regulations further specify that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. §35.130(b)(7).

108. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, provides that "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

109. Like the ADA, regulations implementing the anti-discrimination mandate of §504 provide that "[r]ecipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. §41.51(d).

110. The §504 regulations also provide that "[a] recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons ....." 28 C.F.R. §41.51(b)(3).

**CAUSES OF ACTION**

28

111.   Plaintiffs incorporate and re-allege paragraphs 1 through 121.

## FIRST CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1396a(a)(43)(C), 42 U.S.C. § 1396d(r)

112.   The Defendants' practices and procedures for administering the MassHealth program

violate the EPSDT provisions of the Medicaid act, 42 USC § 1396a(a)(43)(C). Plaintiffs

are unable to obtain the private duty nursing services in their homes that the Division has

determined to be medically necessary because of defendant's failure to administer the

program in compliance with relevant EPSDT statutory provisions.

113.   The Defendants have failed to "provide or otherwise arrange" for the provision of these

services which have been determined to be medically necessary treatment by screening

physicians.

114.   The Defendants have failed to  "make available a variety of individual and group

providers qualified  and willing to provide EPSDT services" in violation of  42 C.F.R. §

441.61(b).

115.   The Defendants' violation of these statutory and regulatory obligations has harmed and

threatens to harm the named plaintiffs and all other similarly situated MassHealth

members under the age of 21.

116.   These violations, which have been repeated, entitle the plaintiffs to relief under 42 U.S.C.

§ 1983.

## SECOND CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1396a(a)(30)

117.   The Defendants' practices and procedures for administering the MassHealth program

violate 42 U.S.C. § 1396a(a)(30), which requires that the state plan shall provide such methods and procedures ... as may be necessary... to assure that payments are ... sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."

118.  The Defendants have not assured that payments for private duty nursing services are sufficient to enlist sufficient providers so that care and services are available to MassHealth members to the same extent that they are available to the general population.

119.  The Defendants' actions and inactions in setting the current rates of reimbursement and methods of administration of the private duty nursing service of MassHealth prevent providers from being able to hire sufficient staff to meet all hours of service requested by MassHealth members and determined to be medically necessary.

120.  The Defendants' failure to provide adequate reimbursement and methods of administration for home health care agencies and independent nurse practitioners for providing private duty nursing services to MassHealth members violates the requirement of 42 U.S.C. § 1396a(a)(30).

121.  The Plaintiffs are unable to obtain medically necessary private duty nursing services in their homes because the MassHealth rate for such service and the methods of administration of the program, including but not limited to the failure to provide for an increase in the rate for overtime work by private duty nurses, has led to a decrease in the number of MassHealth providers for private duty nursing. By failing to provide an adequate reimbursement rate, the defendant has violated 42 U.S.C. § 1396a(a)(30).

30

122.   The Defendants' violation of 42 U.S.C. § 1396a(a)(30) has harmed or threatens to harm

the named plaintiffs and all other similarly situated MassHealth members.

123.   This violation, which has been repeated, entitles the plaintiffs to relief under 42 U.S.C. §

1983.

### THIRD CAUSE OF ACTION

#### VIOLATION OF 42 U.S.C. § 1396a(a)(8)

124.   The Defendants' practices and procedures for administering the MassHealth program

violate 42 U.S.C. § 1396a(a)(8), which requires that assistance shall be furnished with

reasonable promptness.

125.   The Defendants' practices, including rate setting and methods of administration, make it

impossible for plaintiffs and other class members to receive all of the private duty nursing

services that have been determined by the Division to be medically necessary with any

degree of reasonable promptness.  Plaintiffs fail to receive many of the hours of service

each week that have been approved for them and these services are never made up or any

other arrangement made for provision of the service.

126.   The Defendants' failure to assure that private duty nursing  services are delivered with

reasonable promptness, as required by 42 U.S.C. § 1396a(a)(8), has harmed or threatens

to harm the named plaintiffs and all other similarly situated MassHealth members.

127.   The Defendants' violation of 42 U.S.C. § 1396a(a)(8)  entitles the plaintiffs to relief

under 42 U.S.C. § 1983.

31

## FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1396a(3)

128.   The Defendants have failed to provide the Plaintiffs with notice that they will not receive all of the hours of private duty nursing services determined to be medically necessary for them or to provide the Plaintiffs with an opportunity for a hearing to contest this failure to provide the service in  violation of  42 U.S.C. § 1396a(3) and  42 C.F.R. §§ 431.206, 431.210 and 431.220.

129.   The Plaintiffs receive substantially less private duty nursing services each week than they are entitled to without receiving notice of this deficit and an opportunity to contest the deficit in service.

130.   The Defendants' violation of 42 U.S.C. § 1396a(3) and 42 C.F.R. §§ 431.206, 431.210 and 431.220. has harmed or threatens to harm the named plaintiffs and all other similarly situated MassHealth members.

131.   This violation, which has been repeated, entitles the plaintiffs to relief under 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION
### VIOLATIONS  OF  THE ADA

132.   The Defendants are the chief executives of  public entities that are subject to the requirements of Title II of the ADA, 42 U.S.C. §§12131 et seq.

133.   The plaintiffs and the class they represent are individuals with disabilities as defined by the ADA and are otherwise qualified to receive private duty nursing services.

32

134. The Defendants, through the structure and operation of the private duty nursing services component of MassHealth threaten the plaintiffs and the class they represent with the need to leave their family homes and enter pediatric nursing homes or hospitals in order to be able to obtain nursing services that they need.

135. The Defendants' failure to provide the plaintiffs and the class they represent with nursing services in the most integrated setting appropriate to their needs violates 42 U.S.C. §12132 and 28 C.F.R. §35.130(d).

## SIXTH CAUSE OF ACTION
## THE INTEGRATION MANDATE OF §504

136. The Defendants receive federal financial assistance to operate their Medicaid Program and are thus subject to the non-discrimination requirements of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.

137. The plaintiffs, and all members of the class that they represent, are disabled as defined by Section 504, 29 U.S.C. § 794.

138. The Defendants, through the structure and operation of their health care delivery system, threaten the plaintiffs and the class they represent with the need to leave their family homes and enter pediatric nursing homes and hospitals in order to be able to obtain medically necessary nursing services.

139. The Defendants' failure to provide the plaintiffs and the class they represent with medically necessary nursing care services in the most integrated setting appropriate to their needs violates 29 U.S.C. §794 and 28 C.F.R. §41.51(d).

33

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this court:

1. Certify plaintiffs as a class pursuant to Fed. R. Civ. P. 23(b)(2) for purposes of this action.

2. Declare, adjudge, and decree that the policies and methods of administration used by the Defendants in providing private duty nursing services to MassHealth members under the age of twenty-one violates the provisions of 42 U.S.C. § 1396a, including 42 U.S.C. § 1396a(a)(3), (a)(8), (a)(10)(B) and (a)(30), and regulations promulgated pursuant thereto.

3. Declare, adjudge, and decree that the policies and methods of administration used by the Defendants in providing private duty nursing services to MassHealth members under 21 violates the provisions of EPSDT program, including 42 U.S.C. §§ 1396a(a)(43), 1396d(a)(4)(B) and 1396d(r).

4. Declare, adjudge and decree that the policies and methods of administration used by the Defendants in providing private duty nursing services to MassHealth members under 21 violates the provisions of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

5. Issue a permanent injunction requiring that the Defendants:

    a) adopt a rate methodology for MassHealth private duty nursing reimbursement rates that sets rates at a level sufficient to recruit an adequate number and geographic distribution of qualified providers so as to make available prompt and adequate private duty nursing services for plaintiffs and all similarly situated MassHealth members;

34

b) take such other measures as are necessary to improve administration of the MassHealth

program, and to otherwise bring the statewide private duty nursing services program into

compliance with applicable federal law so that the plaintiffs can receive all medically

necessary private duty nursing  services.

6.  Award plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C.§1988; and

7.  Grant such other and further relief as this Court may deem just and equitable.


Bethany Sabbag, Matthew Richards,
Michael Pietroniro, Timothy Lynsky,
and Marcie Zurbliss
Plaintiffs

By their Attorneys


Tim Sindelar BBO # 557273
Disability Law Center
11 Beacon Street Suite 925
Boston, MA 02108
(617) 723 8455  x 139
Fax: (617) 723 9125


Nancy Lorenz BBO # 305000
Greater Boston Legal Services
197 Friend St.
Boston, MA 02114
(617) 371-1234
(617) 371 -1222 Fax


Stefanie  Krantz BBO # 564559
Disability Law Center
22 Green Street
Northampton, MA 01060
(413) 584-6337
(413) 586-5711 Fax


Victoria Pulos BBO # 407880
Massachusetts Law Reform Institute
99 Chancy Street
Boston, MA 02111
(617) 357-0700
(617) 357-0777 Fax


35

Daniel Bartley  BBO # 032470
Greater Boston Legal Services
197 Friend St.
Boston, MA 02114
(617) 371-1234
(617) 371 -1222 Fax